NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 19, 2022[*]
Decided April 26, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1675

| | |
|---|---|
| WILLIAM RICHTER,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 C 6480 |
| GHALIAH OBAISI, as Executor of the Estate of SALEH OBAISI,<br>    *Defendant-Appellee*. | Gary Feinerman,<br>*Judge*. |

**O R D E R**

William Richter, an Illinois prisoner, appeals the district court's decision not to recruit a second pro bono attorney for him after he told his first one to withdraw. The court concluded that Richter did not have a legitimate reason to discharge the lawyer and that he was competent to litigate his one remaining claim. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Richter filed a pro se complaint against Dr. Saleh Obaisi—and other defendants not party to this appeal—for deliberate indifference to his medical needs at Stateville Correctional Center. *See* 42 U.S.C. § 1983. (Dr. Obaisi died in 2017; his estate's executor was substituted as defendant. FED. R. CIV. P. 25(a).) Richter alleged inadequate medical care for his back problems, chronic pain, and testicular swelling.

Richter also moved for the recruitment of counsel. He explained that he was disabled, suffered from chronic pain, had only a high-school education, and needed another inmate to prepare his pleadings. He also feared he could not investigate the case from inside a maximum-security prison. The district court granted the motion based on Richter's medical condition, his disabilities, and the inherent difficulties for inmates in cases involving medical issues. It recruited Larry Smith to represent Richter.

Richter's claim against Dr. Obaisi survived summary judgment because of a factual dispute about whether the doctor had offered to send Richter to an offsite specialist to assess his candidacy for back surgery. Despite this success, Richter's relationship with Smith eventually broke down, and Richter asked the court to recruit new counsel. He averred that he had lost trust in Smith for several reasons, including that Smith had dropped claims from the amended complaint, had not sent him copies of filings, and had not consulted him about decisions. He also preferred to have an attorney with more experience with medical cases. In denying the motion, the district court observed that Smith had represented Richter "with diligence and skill" and informed Richter that he could either continue with Smith or proceed pro se.

The relationship did not improve over the next year and a half. Smith, when attempting to arrange a settlement conference, reported that Richter was refusing his calls. Finally, Smith moved to withdraw, prompting two hearings. Smith produced a letter from Richter demanding that he withdraw from the case. (The judge reviewed the letter in chambers, but the parties agreed not to make it part of the record.) The court asked Richter to confirm that he wanted Smith to withdraw. Richter said that he wanted an attorney with greater medical expertise, and he accused Smith of omitting claims from the amended complaint (a contention that the court investigated and found unsupported). Richter also wanted Smith to consult a different expert. The court explained that Smith had not "fallen short" in his assigned task and again informed Richter that his only options were to continue with Smith or to proceed pro se. Richter did not state that he was willing to proceed pro se, but he did not agree to continue with Smith. The court allowed Smith to withdraw.

Richter filed a motion for recruitment of new counsel. The district court denied it, explaining that Smith had "ably represented" Richter, and Richter's dissatisfaction with his performance was "not objectively reasonable." It noted that Richter was not entitled to counsel of his choice, and that his difficult situation—going to trial as a pro se litigant—was "entirely of his own making." For two more years, Richter repeatedly asked the court to reconsider, insisting that Smith's performance had been deficient. He confirmed that he had told Smith in a letter to withdraw, but he later denied that he "fired" the attorney, saying Smith resigned. The court stood firm, remarking that it did "not wish to impose upon the time and talents of a new attorney" after what had happened with Smith. It later added that if Richter's dissatisfaction with Smith had been reasonable, it would have recruited new counsel for him.

After repeated attempts to settle the case failed, the court sought to set a trial date, but Richter balked. At the last pretrial hearing, Richter stated that he was unable to try the case given his worsening health: he said that he had been diagnosed with dementia, had hearing and vision difficulties, and was scheduled for numerous medical procedures. He once again asked for substitute counsel, but the court refused. After discussing the dismissal of Smith, the court observed that Richter was "very well-spoken"—more eloquent than "most attorneys who appear in this court." It concluded that Richter "ha[d] the wherewithal to handle this relatively simple trial on this one relatively simple matter that remains." The court also referred to our decision in *Richter v. Wexford Health Sources, Inc.*, 838 F. App'x 193, 195 (7th Cir. 2021), in which we affirmed the same judge's denial of Richter's motion for recruited counsel in another case—a decision based in part on Richter's firing of Smith in the present matter. Richter confirmed that, if the court empaneled a jury, he would not present witnesses or evidence. Unwilling to take that course during a pandemic, the court dismissed the case for lack of prosecution.

On appeal, Richter challenges the district court's refusal to recruit substitute counsel, a decision we review for abuse of discretion. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Richter first argues that the court based the denial on a misperception of what happened with Smith. The court, he says, erroneously faulted him for "firing" Smith when, in fact, Smith withdrew. He also stresses that the court overlooked good reasons for his dissatisfaction with Smith. But, as we explained in *Richter*, 838 F. App'x at 195, the court's finding that Richter unreasonably fired Smith was not clearly erroneous. The court held multiple hearings on Smith's motion to withdraw during which Richter aired his concerns and confirmed that he had told the attorney in writing to withdraw. Richter instigated the withdrawal, so the court was not wrong to deem it a

firing. Further, the court's conclusion that Smith had "ably represented" Richter is well supported; Smith worked on the case for over four years, consulted an expert witness (although not the expert of Richter's choosing), saw one of Richter's claims through summary judgment, and attempted to obtain a favorable settlement (albeit for less than what Richter thought the case was worth). Even after Richter first sought to replace him, Smith continued representing Richter for another year and a half, until Richter dismissed him for what the court found were invalid reasons.

Next, Richter contends that the court failed to consider properly whether the difficulty of the case exceeded his ability to litigate it, *see Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc), because the court overlooked the help he received from other inmates. But the court assessed both Richter's competence and the difficulty of the case, as required. The court highlighted his oral advocacy abilities, which are relevant to trial. (Richter maintains on appeal that he is "functionally illiterate." But he did not mention illiteracy to the district court, and we assess the reasonableness of the court's decision based on the information available at the time. *Id.* at 659.) And it reasonably characterized the single issue in the case as "relatively simple": No complicated medical evidence would be needed to decide whether Richter had been given a chance to see a back specialist. The district court, which observed Richter for years in this and other cases, had the better position from which to evaluate Richter's abilities, and we see no error. *See Mejia v. Pfister*, 988 F.3d 415, 419 (7th Cir. 2021).

More importantly, the court reasonably considered Richter's rejection of Smith. Richter argues that this consideration is not part of the *Pruitt* framework, under which the court originally concluded he was entitled to counsel. But *Pruitt* sets the floor for what a district court must do when asked to recruit counsel; nothing in that decision required the district court to ignore the experience with Smith. We have emphasized that the help of a pro bono lawyer in civil litigation is a "privilege" and a "limited resource" that "should not be squandered on parties who are unwilling to uphold their obligations." *Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 936–37 (7th Cir. 2020) (noting it was a "serious mistake" to serially recruit attorneys after plaintiff refused to cooperate with first one). The initial decision to recruit counsel did not bind the court to do so again, even if Richter's abilities had not improved. *See Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018). Even in criminal cases, indigent litigants are not entitled to counsel of their choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). And courts can permissibly consider the scarcity of recruited talent when deciding how to allocate resources in civil cases. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020).

As the district court recognized, in many circumstances, handling a trial is beyond the capabilities of a pro se litigant, particularly one who is ill, like Richter. *See Perez v. Fenoglio*, 792 F.3d 768, 784–85 (7th Cir. 2015). That does not excuse Richter's choice to squander a scarce resource—one many indigent litigants never receive—despite the court's clear warnings that no further help was on offer.

AFFIRMED